Good morning, Your Honors, and may it please the Court, I'm Joseph Weisman, counsel for Appellant Anthony Boykin in this matter. Your Honors, as we say in the Appellant's opening brief, there's three issues that we contend the district court erred on. I want to focus on my limited time. And by the way, if the Court pleases, I'd like to reserve two minutes for rebuttal. I'd like to focus two issues with the limited amount of time I have, the first one being the issue of the sentencing manipulation. Appellant contends that in this particular case, that the district court erred by failing to consider the notion that there was sentencing manipulation that occurred in this case. And what we believe the appropriate thing to do, if this Court were to agree, would be to remand the case for resentencing so Mr. Boykin could get at least two levels reduced from his sentence. Did you label your contention below sentencing manipulation as such? Judge Hawkins, no. Mr. Boykin's trial lawyer, in his formal objections to the PSR and his sentencing memorandum, denoted it as sentencing entrapment. The government contends, therefore, that the Appellant waived that issue and, therefore, it should now be considered under the Plaintiff's stand. There is a difference, isn't there? There is a difference. And certainly, Mr. Griffith, Mr. Boykin's trial lawyer, did not cite, well, did cite to the cases that this circuit and other circuits have decided on entrapment. But my view is, if one looks at the record, particularly what Judge Shub, the colloquy that Judge Shub had with Mr. Boykin's counsel, Judge Shub was referring to, in my view, was sentencing manipulation, because he did say, although he concluded that entrapment didn't occur in the case, he said, I will consider your arguments about a reduction based upon the quantity at sentencing. So, counsel, if indeed that is your interpretation of what the sentencing judge said, then how can you argue that the sentencing judge did not address the issue? Well, that's my point, Your Honor. I believe that Judge Shub did address the issue under sentencing manipulation, but did not give Mr. Boykin, and erred by not giving Mr. Boykin, a reduction based upon what was clear manipulation. I thought you said when you first came up that the sentencing court failed to address the sentencing manipulation. Well, it failed to address it in the sense of the and I apologize if I confused the Court, but failed to address it in the sense of giving Mr. Boykin the benefit of a reduction which I think was appropriate. The error, in my view, is that the judge did not grant him a departure based upon manipulation. Isn't that based on the standard of review of abusive discretion, and didn't he exercise his discretion, considered the point whether he called it the right thing or not, and then rejected the position that it was appropriate to adjust for it? Well, I don't think that, Your Honor, I don't think that Judge Shub adequately looked at the issue and addressed the issue. I think he merely said, I will consider your arguments about the quantity, but yet proceeded to give him the low-end guideline sentence without any analysis of whether or not Mr. Boykin should have received a two-level reduction. And I think that's the structural error. But isn't that all linked into whether or not the sentence was reasonable? Because we don't have really departures anymore. So isn't that all just part of the fabric of determining whether or not the sentence overall was reasonable? Your Honor, it would be that. And I agree that that under this circuit's precedence, it's a reasonable sentence that you would review, in other words, to determine whether a sentence is reasonable in any given case. However, in this, when you have a situation with sentencing manipulation, assuming the Court agrees with me that it occurred, the effect of sentencing manipulation on the justice system and on the integrity of the justice system is such that it should be somewhat different, the analysis. In other words, it should be critically looked at to determine whether the district court judge accepted, and if so, whether the district judge gave the appropriate reduction. In this case the judge said, you know, I agree with you. This record sort of smacks of some kind of manipulation, the FBI memo, et cetera. And I'm going to take that into consideration. Do you have any case that says he has to, having said that, depart two levels? No. I don't, and I don't think that there's no ipso facto connection between a determination that, even if it were determined, that sentencing manipulation had occurred and the quantum of mercy, if you will, shown in the sentence, correct? Your Honor, that is correct. There is no case law that says that if a district court judge finds, in fact, manipulation occurred, that therefore he or she is required to take some sort of curative steps. However, in this case, I don't, respectively, I don't believe that Judge Shub adequately went through the process to determine whether, in fact, it occurred. He simply said to Mr. Boykin's lawyer, well, I've considered, I've heard your arguments. I'll consider that. But yet follow through with giving him a low-end guideline sentence that did not say anything about, I've taken your arguments into consideration, but nevertheless, I'm determining that Mr. Boykin deserves 210. Which you're the trial defense counsel asked for any kind of evidentiary hearing on manipulation? He did not. My recollection of the record in the transcript, he did not ask for an evidentiary hearing. The question whether the court's respondent should have held one if the court believed that manipulation occurred is a question to the answer to which I don't know, but no, he did not ask. I take it that the PSR did not suggest this two-level departure. No. The PSR did not. Did it? Did the PSR go into any of the aspects of sentencing manipulation or law enforcement misconduct? My recollection, Your Honor, is that the PSR did not do that. The only time that that issue was raised was in Mr. Boykin's formal objections to the PSR when it went before Judge Schott. Did any of those include a suggestion that the court conduct an evidentiary hearing into these matters? My recollection, Your Honor, is that Mr. Griffin, for Mr. Boykin, just indicated that there was manipulation, argued why there was manipulation, as we as it's indicated in the excerpts of record, the actual paragraph that the issue sort of confronts, but did not specifically ask for an evidentiary hearing on that particular matter. His counsel did not cite Baker in his motion. I'm not sure the reason why he didn't, but nevertheless, it was not asked for. And if I may just move on just briefly with the remaining time, Your Honor. With respect to the second argument that I want to address, that is the argument concerning the overstatement of Mr. Boykin's criminal history. The argument that we raise is that Mr. Boykin's trial lawyer did raise that, indicated that he believed that Mr. Boykin's criminal history was overstated. Judge Shubb did not really, in my view, address that issue, simply other than to say I'm not going to get into it. I'm paraphrasing the transcripts. And this Court's precedence is that when there is a an adequate showing or argument made that a defendant's criminal history is overstated, the Court has to have the Court has to take some affirmative steps to look into that, to inquire into the underlying convictions that support the criminal history category that's under attack. And what the Well, that evidence was before Judge Shubb. He had the argument about why it was overstated, and he rejected it. Isn't that true? Well, he did, but, Your Honor, my view is he rejected it by simply saying he wasn't going to get into it, and he simply said that you just assign the points on the previous convictions, and that's the end of it. But based upon this Court's precedent, when a request for a specific departure is made, the Court must explain its reasons for either accepting the request for a departure or not. And in this the Court has to exercise the discretion, and based on the transcripts of the sentencing proceeding, it appears that Judge Shubb did not do that. He just simply said I'm not going to address it simply because I just add up the score. Your Honor, at that point, I'd like to reserve a few minutes in rebuttal. All right. Thank you, counsel. You may. We'll hear from the government. Good morning. May it please the Court. Heiko Coppola on behalf of the United States. Picking up where Mr. Wiseman left off, Judge Shubb did give his reasoning with respect to the overstatement of the criminal history. He said he thought that the defendant's criminal history was, in fact, properly calculated. And to that extent, as Your Honor pointed out, he did have Mr. Boykin's arguments in front of him at the time related to the overstatement with respect to two of the six convictions that were listed in the pre-sentence report. So to that end, Judge Shubb did not commit error. And I think it's important to note as well, as the Court was hinting at earlier, Judge Shubb did show a remarkable amount of discretion in sentencing Mr. Boykin in this matter. His advisory guideline range was 262 to the original bottom end of his guideline range. In order to avoid sentencing disparity and to take into consideration the arguments that Mr. Griffin, Mr. Boykin's trial defense counsel raised, Judge Shubb granted a sentence of 210 months, which was exactly what the co-defendant, Mr. Boykin's brother, received after a guilty plea to the conspiracy count. So the government's position here is that the sentence was, in fact, reasonable, the criminal history was not, in fact, overstated, and that Judge Shubb certainly did not abuse his discretion in the matter. Ginsburg. Do you take issue with opposing counsel's representation that Judge Shubb actually spoke in terms of sentencing manipulation language? Your Honor, I do take exception to that, because all of the arguments below use the word entrapment. Indeed, all of the case law that was used by Judge Shubb did not use the word entrapment. It certainly could be. Our Court, in four or five decisions, uses language like sentencing entrapment, also known as sentencing manipulation, when, in fact, they're very different. Entrapment focuses on the intent of the defendant, the convicted defendant in this case. Manipulation focuses on law enforcement conduct. That's correct, Your Honor. And in this case, the arguments below were all about whether or not Mr. Boykin or centered on whether or not Mr. Boykin had the intent to deliver such large quantities. But he did talk about the fact that there's a memo in the file from the FBI, isn't there, about the U.S. attorney's position on making sure you get a certain amount of cocaine or methamphetamine to achieve a mandatory minimum of five years? Yes, Your Honor. There is a restatement in an internal memo not dealing with this particular case specifically, but with a number of cases that recites the ---- I thought Mr. Boykin's name was in the subject line. Am I wrong about that? I don't recall offhand, but it was ---- a number of cases were discussed in that memo. Including his. Including his. That's correct, Your Honor. Yes. So, but, you know, the interesting point here is, at least in terms of the manipulation, if we turn to the first buy, the first charged buy in this case, that first charged buy, Your Honor, already took care of the 50 grams that would have necessitated meeting the government's sentencing guideline or, excuse me, charging standards. But there's other evidence of misconduct, isn't there? I would not characterize it as misconduct, Your Honor. Well, let's see. Let's see how you characterize it. You had ---- this was a joint task force, State and Federal agents? It was, yes. And you had an agent in the task force whose brother had drug problems and dealt with Mr. Boykin, correct? That is correct. And that same agent had, for lack of a better description, an interesting relationship with a young female who was working undercover? He was her handler. She was a confidential informant, Your Honor, yes. And he had a key to the apartment where she lived? That is correct. He did. And they met late at night? They did. And when she was on the stand, she called him Tommy? She referred to him by his first name, yes. Many times. That's correct, Your Honor. Even after being told by the prosecutor to refer to him by his agent name? That is correct. And would he have had any interest in seeing these undercover buys go on further to increase the sentence either with respect to his brother, who he wanted to keep away from Boykin, or this woman that was undercover? There was no evidence of that, Your Honor, no. So and, in fact, Ms. Housley, as the Court knows from the briefing below, was deactivated as a confidential source shortly after the, I believe, the second and third purchases here because she was charged with Federal felonies from her concatenation fraud. Did he tell the truth about that when he testified? Your Honor, he misspoke when he testified, and we had to correct the record. No. When defendants say A happened and it turns out that B happened, they're charged with perjury. The agent got on the stand and said that I was working with this undercover woman, and the moment she was charged, I frog-marched her down to the FBI office. We had nothing further to do with her. That was his sworn testimony, correct? That was his testimony below, yes. And we corrected that when it became clear that that was not the case. And later he filed an affidavit saying it wasn't when she was charged, it was when she was convicted, and she continued to work and was continued to be paid during the interviewing period, correct? She did, but not on this case, Your Honor. And what she was charged with was Katrina insurance fraud? Yes, Your Honor. In a Federal indictment? That is correct. So he's dead wrong about when he first cut her off, correct? That is correct. He was mistaken. Mistaken? Mistaken? He was mistaken. Okay. Now, is there any All of this was in front of Judge Shubb. Did he have any kind of evidentiary hearing to determine whether these sort of lingering items of misconduct had anything to do with the way in which the case was processed? No, Your Honor. He did not. There was not an evidentiary hearing with respect to that. Ogden was that is his name, right? Detective Ogden? Oakes, Your Honor. Okay. He was candid enough to admit on the stand that he probably shouldn't have been on the task force, right? My recollection was that he indicated that he had a limited role. Counsel, when someone's on the stand and they're under oath, they don't indicate. The Latin verb for that is to misdirect. They testify, and they testify under oath. So under oath, he said that he thought he shouldn't be on the task force, correct? My recollection was that he said he indicated he had a limited role. I do not recall him saying otherwise. Okay. Let's assume that he did say that. Didn't he also tell his supervisor that he shouldn't be on the task force? There was some discussion about what his role should be, yes. And was he yes or no, did he say I shouldn't be on the task force, given that my brother has drug problems, deals with Mr. Boykin extensively? I don't recall that offhand, Your Honor. Okay. Maybe opposing counsel can tell us, enlighten us a little more about that. But no evidence you're hearing at all about that? No, Your Honor. Okay. And the government argued that they had legitimate law enforcement reasons for continuing the investigation, absolutely independent of any increase in sentence, correct? That's correct, Your Honor. Is there any evidence to support that in the record? Is there any evidence to support that in the record? Yes. The deactivation of Ms. Rios, the first C.I., and the deactivation of Ms. Housley. Agent misspoke about it. That's correct, Your Honor. Okay. I've taken enough of your time. Thank you. All right. With respect to and again, just to with respect to sentencing entrapment and manipulation, the government's position is clearly that there was none here and that Judge Shub certainly exercised his ---- And no government, no law enforcement misconduct of any kind? The government does not see it that way, no, Your Honor. Did you supervise this investigation? I did not, Your Honor. Did someone in your office? Yes, Your Honor. Do you know if they were aware of what I've gone through with you? I don't know the answer to that, Your Honor. Okay. Thank you. Unless the Court has any additional questions for me on these two issues. I bet you hope not. But I'm happy to entertain more. So. It appears there are none. With that, thank you. Thank you. Just briefly, Your Honors, with respect to Judge Hawkins, your comment, indeed, there was reference to Mr. Boykin in the memo. As a matter of fact, the preceding paragraph of the paragraph that's really in question here, there's reference to Mr. Boykin having been arrested for a DUI and a weapon was found in the car. And there was some reference in the memo that the U.S. Attorney's Office would consider that weapon to, if you will, enhance. I take it you've read the same record that hopefully all of us have read. Did the agent in question, the one I've been talking about, in fact suggest that he should not have been on the task force? I do believe that is the case, that that was suggested. And isn't it correct that the testimony shows that he told his supervisor that? Yes. It's my recollection. He told the supervisor, I should not be on this task force. That is my recollection of the record. And what I want to say with respect to that is, is we, in our opening brief, we addressed the, what we consider the outrageous conduct by the government. I didn't argue this because it's there in the record. And number two, I think maybe, well, the way I read some of the, some of the most recent cases of this circuit, I'm not sure a prejudice even has to be shown when there is manipulation, because it just does impinge the integrity of the executive branch. Now, all of the things that I went through with your colleague were known to the defense at the time or before sentencing, correct? They were known before sentencing, correct. The agent's testimony, the relationship with the female, his brother's involvement with Boykin, et cetera. That is all of this was known to the defense. Yes. Because that came out through testimony at trial. The only thing, Your Honor, I don't believe that the defense lawyer knew at the time was this memo. I think this memo was something that was produced later in the court. It was available at sentencing, correct. It was referenced to in the sentencing memorandum. Okay. So on that, thank you. All right. Thank you. Thank you to both counsels. The case is argued and submitted for decision by the Court.
judges: Lynn, Hawkins, Rawlinson